18-mj-1245-DLC

# AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Brendan Hanratty, being duly sworn, depose and state as follows:

## I. Background and Experience

1.  I am a Special Agent employed by the Drug Enforcement Administration ("DEA"), and have been so employed since 2005. As a DEA Special Agent, I am authorized to investigate violations of the laws of the United States, including violations of the federal narcotics laws in Title 21 of the United Stated Code.

2.  I have participated in numerous investigations and arrests involving violations of state and federal controlled substances laws, including Title 21, United States Code, Sections 841(a)(1) and 846. Many of those investigations resulted in arrests, indictments, and convictions for violations of drug laws and/or other criminal offenses, the seizure of drugs, money, and vehicles, and the forfeiture of personal property. My investigations have included the use of surveillance techniques, tracking warrants, and the execution of search, seizure, and arrest warrants. I have participated in various aspects of narcotics investigations, including controlled and undercover purchases. Based on my training and experience, I am familiar with the appearance, packaging, and texture of many controlled substances.

3.  As a result of my training and experience, I am familiar with the methods, routines, and practices of individuals involved in the use, sale and trafficking of narcotics. I am also familiar with the various paraphernalia used to manufacture, compound, process, deliver, and dispense, import and export, and use controlled substances such as methamphetamine, fentanyl, heroin, cocaine, marijuana, prescription medications, and others. I have debriefed numerous defendants, informants, and witnesses who have had personal knowledge about drug activities and

18-mj-1245-DLC

the operation of drug trafficking organizations. I have sworn out numerous affidavits in support of search warrants, arrest warrants, and other Court applications.

4. This affidavit is being submitted in support of a criminal complaint against Daniel HERNANDEZ Ixta ("HERNANDEZ") charging that on or about August 29, 2018, the defendant possessed with intent to distribute and did distribute one kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, and 400 grams or more of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(i) & (b)(1)(A)(vi).

5. I have personally participated in the investigation that resulted in the arrest of HERNANDEZ, and I am familiar with the facts and circumstances of this investigation from oral and written reports made to me by other members of the DEA and other state and local law enforcement agencies. I make this affidavit based upon personal knowledge derived from my participation in this investigation and upon information (whether received directly or indirectly) that I believe to be reliable, as set forth below.

5. This affidavit does not set forth all the facts developed during the course of this investigation. Rather, it sets forth only those facts that are necessary and sufficient to establish probable cause to believe that the HERNANDEZ has committed the above-described controlled substance offense.

## II.  PROBABLE CAUSE

6. As described in more detail below, on or about August 3, 2018 and continuing until about August 29, 2018, at the direction and under the supervisor of investigators, a DEA

18-mj-1245-DLC

Confidential Source (CS)[1] entered into an agreement with FNU LNU, aka, BETO in which BETO arranged to supply CS with five (5) kilograms of fentanyl, four (4) kilograms of heroin, and 5,000 pills for a total purchase price of $517,500. During the course of negotiations, CS and BETO participated in numerous recorded telephone conversations in which they discussed the type and quantity of narcotics that BETO would transport and deliver to CS in Massachusetts.

7. For example, during the negotiations, on August 22, 2018, at approximately 3:44 p.m., CS placed a recorded call to BETO. During the call, which was conducted in Spanish, BETO stated that he and his associates had canceled an earlier transport to Massachusetts, but reported that they had another ready to leave. BETO explained that the transport depended on whether the drivers were comfortable. BETO said that if everything was good they would be there on Sunday. CS confirmed that he/she was located in Boston, Massachusetts, and explained that he/she was located past New York (referring to the driving distance), but stated that it was much calmer than New York (suggesting that there was less law enforcement presence in Boston than New York). BETO confirmed CS's order of five (5) kilograms of fentanyl and four (4) kilograms of heroin and CS stated that he/she was more interested in heroin.[2] Additionally, BETO stated that he talked to his contact for the pills. CS provided a price of $13.50 per pill and BETO stated that he would send 5,000 pills. Based on the investigation, including this recorded call, agents believe that BETO reported to CS that there was a delay in the transportation of a shipment of

---

[1] The CS has been working for DEA since 2004. Since that time, CS has been paid by DEA in exchange for information related to narcotics investigation. Based on the information provided by CS in the past, he is considered reliable. The CS is willing to testify.

[2] Over the course of the negotiations, CS and BETO used coded language to refer to the heroin and the fentanyl. CS and/or BETO would refer to the fentanyl as *blanco* and heroin as *crema*. As negotiations continued, CS and/or BETO would refer to the narcotics as "the four" and "the five." Based on my training and experience, I believe that BETO was agreeing to sell CS fentanyl ("*blanco*") and heroin ("*crema*").

narcotics by tractor trailer but that another driver would soon depart for Massachusetts. BETO further informed CS that, if there were no problems, the shipment would arrive in Massachusetts on or about Sunday, August 26, 2018. Agents further believe that BETO confirmed that he would supply CS with five (5) kilograms of heroin, four (4) kilograms of fentanyl, and 5,000 pills.

8. One week later, on August 29, 2018, at approximately 12:23 p.m., CS made a recorded call to BETO. BETO told CS that the truck was in the area. CS suggested that they meet at a Home Depot parking lot. In response, BETO requested a garage and told CS that they could not do the exchange at Home Depot. CS stated that he/she had a garage, but had to wait until after everyone departed to use it. BETO asked CS if he/she would like to do the transaction one at a time and CS stated that he/she does not want to take the chance by doing it one by one. CS told BETO that he/she would be ready in an hour and a half. Based on the investigation, agents believe that BETO confirmed that a tractor trailer was in the Boston area to deliver heroin, fentanyl, and pills to CS as they had earlier arranged. Agents further believe that BETO requested that the exchange of drugs for payment be made inside of a garage to reduce the risk of visibility to law enforcement. Agents also believe that BETO asked CS if CS preferred to exchange the kilos one at a time for safety reasons, but CS responded that he/she wanted to make the entire exchange simultaneously.

9. On August 29, 2018, at approximately 2:18 p.m., CS received an incoming call from telephone number (951) 758-3860, utilized by an unidentified male ("UM"). During the call, UM asked CS how the money was packaged. CS stated that the money was divided in $1,000 increments by rubber bands. UM stated that they cannot be counting money and stated that the driver would take a photo of the money and that when the money was delivered to the

owners, the owners of money would see that it was the same. CS asked where they were going to meet and UM stated that they would send a location now. Based on the investigation, agents believe that UM is an associate of BETO and that UM contacted CS to confirm that CS was ready with payment for the delivery and to inquire as to how the money was packaged.

10. On August 29, 2018, at approximately 2:18 p.m., BETO sent CS a WhatsApp message with the address 351 Holt Road, North Andover, MA 01845. This location is an industrial warehouse park near the Lawrence Municipal Airport.

11. On August 29, 2018, at approximately 2:59 p.m., CS placed a call to (657) 294-8208, utilized by the driver, later identified as Daniel HERNANDEZ Ixta. The CS informed HERNANDEZ that BETO's associate had passed him/her the contact number for HERNANDEZ.[3] HERNANDEZ stated that he was parked by the entrance in a black truck and clarified that it he was in a tractor trailer.

12. Ten minutes later, on August 29, 2018, at approximately 3:10 p.m., CS arrived at 351 Holt Road in North Andover and called HERNANDEZ. HERNANDEZ provided CS with directions and motioned to CS to pull up next to the tractor trailer. CS parked next to the tractor-trailer. At that time, HERNANDEZ exited the tractor trailer, removed a black duffle bag from the cab of the trailer, and placed it in the rear passenger seat of CS's vehicle. CS manipulated the bag and felt what CS believed to be multiple kilogram "bricks" within the bag. CS observed a lock on the bag and asked the driver for a key. HERNANDEZ said there was no key. The CS told HERNANDEZ that he/she was going to call his/her associate to bring the money. At that

---

3 In an earlier communication, UM had provided CS with (657) 294-8208 as the number for the driver.

18-mj-1245-DLC

time, CS contacted DEA Task Force Officer Felix Figueroa and utilized a transmitting device to inform law enforcement personnel that the narcotics were present. Shortly thereafter, law enforcement personnel arrived on scene and placed HERNANDEZ under arrest. Officers secured the black duffle bag that HERNANDEZ had placed in CS's car. Officers searched the black duffle bag and found approximately nine (9) pressed, brick-like packages powder wrapped in cellophane. Four of the packages were labeled "BETO." Based on investigators' training and experience, these packages were consistent with the packaging of kilogram quantities of heroin/fentanyl. I also believe that two different types of drugs were present among the nine kilograms, based on the different labeling. Investigators also found approximately 5,000 pill in the duffle bag that were in a small beige cardboard box. Officers searched the CS for contraband with negative results. Because of the dangers presented to law enforcement agents, the suspected heroin was not field-tested.

13. Officers then conducted a search of the tractor trailer. Concealed within the floor board of the cab, investigators located two additional brick-like packages that were similarly wrapped and are believed to be kilograms of suspected heroin/fentanyl and an undetermined amount of United States Currency. In addition, on the floor of the tractor trailer, investigators found a cellular telephone. Investigators called (657) 294-8208, the number that the CS used to contact HERNANDEZ earlier the same evening, and the cellular telephone rang, confirming that it was the same phone.

14. The brick-like packages and pills are being sent to the DEA's Northeast Regional Laboratory for testing.

18-mj-1245-DLC

### IIII. Conclusion

15. Based on the information set forth above, I believe probable cause exists to conclude that, on August 29, 2018, Daniel HERNANDEZ Ixta possessed with the intent to distribute and did distribute one kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, and 400 grams or more of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(i) & (b)(1)(A)(vi).

_____
BRENDAN HANRATTY
Special Agent, Drug Enforcement Administration

Sworn to and subscribed before me
this 30 day of August 2018

_____
HON. DONALD L. CABELL
United States Magistrate Judge
District of Massachusetts